## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CARGILL MEAT SOLUTIONS CORPORATION, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 13-CV-1168-EFM-TJJ<br>) |
| PREMIUM BEEF FEEDERS, LLC, et al., | )<br>) |
| Defendants. | )<br>)<br>) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion to Compel (ECF No. 90). Pursuant to Fed. R. Civ. P. 37, Defendants Premium Beef Feeders, LLC and Power Plus Beef Feeders, LLC d/b/a Power Plus Feeders, LLC ask the Court to order Plaintiff Cargill Meat Solutions Corporation to produce all documents responsive to Request No. 31 of Defendants' First Requests for Production of Documents to Plaintiff. As set forth below, Plaintiff's objections to the discovery request are overruled and Defendants' motion is granted.

**I.      Relevant Background**

Defendants' counterclaim alleges that Plaintiff breached the parties' Cattle Procurement and Feeding Agreement ("the Agreement") at issue in this case by, *inter alia*, failing to execute and/or operate certain risk management and/or hedging strategies for the cattle and grain associated with the cattle purchased pursuant to the Agreement in a reasonably prudent manner.[1]

---

[1] *See* Defendants' Combined Answer and Counterclaim (ECF No. 27) at ¶32.

1

On June 17, 2014, Defendants served their opening discovery on Plaintiff,[2] and one month later Plaintiff served its responses thereto.[3] Included in this exchange was Request No. 31 in Defendants' Request for Production of Documents and Plaintiff's response, which collectively state as follows:

> Request No. 31: Produce any and all Documents related to Your hedging and/or risk management strategies and/or policies for all cattle purchased pursuant to the Agreement including but not limited to any reports, statements or related materials provided to Defendants relating to the current performance and/or future projections on all hedging and/or risk management strategies.
>
> Response: Objection. This Request seeks information that is outside the relevant time frame identified in the General Objections and Stipulations herein, as well as information protected by the attorney-client privilege and/or work product protection. Without waiving these objections, responsive nonprivileged documents for the relevant time frame will be produced on a rolling basis as they relate to the Agreement. Privileged documents, if any, will be set forth on a privilege log which will be provided to Defendants.

During the nine months following Plaintiff's response, the parties exchanged thousands of pages of documents as they produced responsive documents and supplemented their production on a rolling basis. The parties agreed not to withhold any documents other than those that counsel discussed.

On December 30, 2014, Plaintiff provided supplemental responses to Defendants' interrogatories, which included identifying Mr. Farrin Watt as an employee of Cargill who had authority for making entry or exit decisions with regard to hedging and/or risk management

---

[2] *See* Notice of Service (ECF No. 40).

[3] *See* Notice of Service dated July 17, 2014 (ECF No. 43).

transactions of both cattle and grain pursuant to the Agreement.[4]  Sometime after this date, Mr. Watt left Plaintiff's employment, and therefore Defendants were required to serve him with a subpoena to secure his deposition.

Defendants deposed Mr. Watt on April 9, 2015.  During his deposition, Defendants learned for the first time of the existence of specific Cargill documents that Cargill had not produced relating to hedging and/or risk management activities of both cattle and grain pursuant to the Agreement.  The following day, Defendants' counsel sent a letter to Plaintiff's counsel asking Plaintiff to produce the documents Mr. Watt had identified, including a "red book" that contained cattle and grain positions; profit and loss statements; month end statements; confirmation and/or summary of each trade; emails from Mr. Watt and his assistants relating to weekly conference calls; and the source documents Plaintiff used to compile a summary of trades that it had produced.[5]

On April 15, 2015, Defendants' counsel spoke with Sarah Burch, one of Plaintiff's attorneys, to ask if Plaintiff would be producing the requested documents.  Ms. Burch indicated that Cargill's answer would be set forth in letter form, and later that day Holly Dyer, Plaintiff's lead counsel, sent a letter declining to produce the requested documents as irrelevant.  Ms. Dyer offered to schedule a time for the parties to meet and confer about the issue, but she had left the country the day before, on April 14.  Fact discovery closed on April 16, and Defendants therefore were required to file the instant motion that day.

## II.     Summary of the Parties' Arguments

---

[4] *See* ECF No. 90-2.

[5] *See* ECF No. 90-3.

3

Defendants contend that the documents Mr. Watt identified during his April 9, 2015 deposition – documents which Defendants did not know existed until Mr. Watt spoke of them – constitute documents relating to hedging and/or risk management as called for in Request No. 31. Plaintiff had agreed to produce all documents responsive to Request No. 31, and until Mr. Watt's deposition, Defendants believed that Plaintiff had done so.

Plaintiff argues that Defendants' motion to compel should be denied because (1) Defendants failed to comply with the "meet and confer" obligation imposed by D. Kan. R. 37.2; (2) Plaintiff already has produced relevant information responsive to Request No. 31; (3) Defendants' motion is not proportional; and (4) the Court should defer ruling on the motion until the presiding district judge rules on Plaintiff's motion for partial summary judgment on risk management claims.[6]

## III.   Whether Defendants Satisfied Their Obligation to Meet and Confer

The chronology set forth above demonstrates that Defendants had a limited amount of time in which to file their motion to compel. Mr. Watt's deposition took place on April 9, Defendants sent a letter on April 10 asking Plaintiff to produce the documents, and Plaintiff's lead counsel did not respond before leaving the country on April 14. On April 15, Defendants' counsel contacted another of Plaintiff's attorneys who has entered her appearance in this case, and later that day a letter from lead Plaintiff's counsel indicated that Plaintiff would not be producing the documents. The letter included an offer to confer in the future. Discovery closed on April 16, and Defendants were therefore required to file the instant motion that day.

---

[6] *See* ECF No. 127. In light of the Court's ruling on Plaintiff's Motion to Stay Expert Discovery and to Defer Ruling on Defendants' Motion to Compel (ECF No. 98), Plaintiff's request for deferral is now moot.

The Court finds that Defendants have complied with their Fed. R. Civ. P. 37(1)(1) and D. Kan. R. 37.2 obligations to confer. Defendants acted in a timely fashion and contacted the only Plaintiff's attorney available before their deadline. In addition, on May 4, 2015, Defendants' counsel attempted to discuss the issue with Plaintiff's counsel after she had returned to the country, but she declined to do so. The Court finds that Defendants' counsel made a reasonable attempt to confer.

## IV.     Whether the Discovery Sought is Relevant and Discoverable

Federal Rule of Civil Procedure 26(b)(1) sets out the general scope of discovery. It provides that the parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."[7] Relevancy is broadly construed, and a request for discovery should be allowed "unless it is clear that the information sought can have no possible bearing" on the claim or defense of a party.[8] Furthermore, "the touchstone of the relevancy of documents and information requested is not whether the discovery will result in evidence that is, or even may be, admissible at trial, but rather whether the discovery is 'reasonably calculated to lead to the discovery of admissible evidence.'"[9] "For good cause, the court may order discovery of any matter relevant to the *subject matter* involved in the action."[10]

---

[7] Fed. R. Civ. P. 26(b)(1).

[8] *McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586 (D. Kan. 2008).

[9] *Id.* (quoting Fed. R. Civ. P. 26(b)(1)).

[10] Fed. R. Civ. P. 26(b)(1) (emphasis added).

5

When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.[11]  Conversely, when the relevancy of the discovery request is not readily apparent on its face, the party seeking the discovery has the burden to show the relevancy of the request.[12]  Relevancy determinations are generally made on a case-by-case basis.[13]

In this action, the Court finds that the documents described by Mr. Watt fall within those called for in Request No. 31, which Plaintiff agreed to produce, and that the relevancy of the documents is apparent on its face.  Not only is Mr. Watt a former employee of Plaintiff, but he was in charge of all grain hedging and/or risk management during the time relevant to Defendants' counterclaim.  The documents he identified, including the red book, the input and back-up documentation to create the compilation or summaries that Plaintiff previously produced, emails that he and other Cargill employees sent concerning risk management, and a computation of specific losses relating to risk management activities that Cargill was to perform in relation to the jointly-owned cattle, are relevant to Request No. 31.

## V.   Plaintiff's Unduly Burdensome Objection

---

[11] *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

[12] *McBride*, 250 F.R.D. at 586.

[13] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate*, No. 09-cv-2516-JAR, 2011 WL 765882, at *3 (D. Kan. Feb. 25, 2011).

Although Defendants only recently learned of the existence of the documents at issue in this motion, the documents are not newly created. Because they are Cargill's documents that were within its possession and are relevant, Plaintiff had an obligation to produce them or object to their production in response to Document Request No. 31. Plaintiff did neither. In response to Defendants' motion, Plaintiff objects that the discovery sought is not proportional and should not be compelled. Although the Court could reject Plaintiff's objection as untimely and therefore waived, Defendants have not raised that argument and the Court will consider Plaintiff's objection.

Plaintiff's objection, pursuant to Fed. R. Civ. P. 26(b)(2)(C), is that the burden or expense of the proposed discovery outweighs its likely benefit. A party asserting an unduly burdensome objection to a discovery request has "the burden to show facts justifying [its] objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome."[14] Additionally, the objecting party must show "not only undue burden or expense, but that the burden or expense is unreasonable in light of the benefits to be secured from the discovery."[15] This imposes an obligation "to provide sufficient detail in terms of time, money and procedure required to produce the requested documents."[16] Any objection that discovery is unduly burdensome must contain a factual basis for the claim, and the objecting party must

---

[14] *Shoemake v. McCormick, Summers & Talarico II, LLC*, No. 10-2514-RDR, 2011 WL 5553652, at *3 (D. Kan. Nov. 15, 2011).

[15] *Id.*

[16] *Id.*

7

usually provide an "affidavit or other evidentiary proof of the time or expense involved in responding to the discovery request."[17]

Plaintiff asserts that the importance of the additional information is minimal, and that any additional discovery would be cumulative, duplicative, and would add nothing to help resolve the issue. The Court rejects this argument as unsubstantiated. Absent production of the relevant documents, there is no way for the Court or Defendants to know the significance or lack of significance of the documents. Plaintiff then states that it would have to search additional custodian records to find the documents and Plaintiff estimates, without evidentiary support, that the search would cost $4,000 to $5,000 per custodian. Plaintiff does not explain what or how many custodians would be involved.

The Court finds that Plaintiff has not satisfied its burden to show that producing the requested documents would be unduly burdensome. Although Plaintiff articulates the issue as one of proportionality, the only factor Plaintiff mentions is the cost of the discovery. Plaintiff does not set forth what the relative cost of production would be as compared to the amount in controversy. The Court notes that both parties seek damages/setoff in excess of $2,000,000. Plaintiff's unsupported estimate of $4,000 to $5,000 per custodian in discovery costs does not lead the Court to find that ordering the requested discovery violates proportionality, particularly given the history, scope, and nature of this case.

## VI.    Sanctions

Defendants request an award of their reasonable expenses incurred in making this motion. Because the Court is granting Defendants' motion, the Court must award reasonable expenses unless the Court finds that Defendants failed to make a good faith effort to obtain the

---

[17] *Id.*

discovery without court action, that Plaintiff's nondisclosure is substantially justified, or that other circumstances make an award of expenses unjust.[18]

The Court declines to award sanctions at this time. As the chronology shows, the issue developed and ripened within one week. This is not a situation in which one party resisted after multiple attempts to obtain discovery. All counsel appear to have acted in good faith. This motion is one in a series of motions the parties have filed following Mr. Watt's deposition, all relating to the issue of risk management. Plaintiff has filed a motion for partial summary judgment on the issue and, although the Court has ruled that expert discovery should not be stayed pending the presiding district judge's ruling on the motion, the Court finds that an award of sanctions would be unjust.

IT IS HEREBY ORDERED that Defendants' Motion to Compel (ECF No. 90) is GRANTED. Within 14 days of the date of this order, Plaintiff Cargill Meat Solutions Corporation shall produce all documents that are responsive to Request for Production No. 31, which shall include the documents identified during Mr. Farrin Watt's deposition including, without limitation, the "red book" for the relevant time period.

IT IS SO ORDERED.

Dated this 26th day of June, 2015, at Kansas City, Kansas.

                                                  s/ Teresa J. James
                                                  Teresa J. James
                                                  U.S. Magistrate Judge

---

[18] Fed. R. Civ. P. 37(a)(5)(A).