**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| CARGILL MEAT SOLUTIONS CORPORATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 13-CV-1168-EFM-TJJ |
| PREMIUM BEEF FEEDERS, LLC and POWER PLUS BEEF FEEDERS, LLC d/b/a POWER PLUS FEEDERS, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANTS' MOTION TO STRIKE
ERRATA TO JOHN KEATING'S DEPOSITION,
WITH MEMORANDUM IN SUPPORT**

COME NOW the Defendants, Premium Beef Feeders, LLC and Power Plus Feeders, LLC d/b/a Power Plus Feeders, LLC, and file their motion to strike the errata sheet to the deposition of John Keating ("Keating"). Defendants offer the following support:

**FACTS**

1. The Keating deposition was held in Wichita, Kansas, not three months ago. Keating is the President of Cargill Beef, a $14 billion business that employs approximately 16,000 employees.[1] Among other things, Keating was involved with the decision to sue Defendants on a certain Cattle Procurement and Feeding Agreement (the "Agreement") between

---

[1] *See* Deposition of Keating (hereafter "Keating Deposition"), a true and correct copy of the pertinent pages are attached hereto as Exhibit 1, at 12:12-15 and 13:1-12.

Cargill Meat Solutions Corporation ("Cargill") and Defendants,[2] and he participated in weekly calls relating to risk management strategies.[3]  Keating is a key witness in this case.

2.      Keating's testimony was given under oath.  On May 14, 2015, the court reporter, Pro-Depo Court Reporting, Inc., sent to Keating, care of Cargill's counsel, a letter that included the original jurat and errata pages.  It stated, "you are required by law to complete and return the original signature page and correction sheet within 30 days."[4]

3.      Keating returned the jurat and errata sheet on June 15.  Over the course of four (4) pages, he purported to make forty-five (45) changes to the transcript.[5]  At least thirty-five (35) of them were material, some even dramatic.

4.      Pursuant to Local Rule 37.2, Defendants' counsel, Mr. Christensen, attempted to resolve the issues presented here with Plaintiff's counsel, Ms. Holly Dyer, on June 18 by telephone conference.   Although the parties were unable to resolve all issues, Cargill did withdraw several errata, producing an amended list of now 15 changes to the Keating testimony. As a further attempt at compromise, Defendants challenge only 6 of the 15 remaining changes. Because the Parties were unable to reach an agreement on these 6 changes, however, the Court's intervention is required.

---

[2] *Id*. at 119:19-23, Exhibit 1.

[3] *See* Deposition of Farrin Watt (hereafter "Watt Deposition"), a true and correct copy of the pertinent pages (with redactions) are attached hereto as Exhibit 2, at 31 – 33.

[4] A true and correct copy of the May 14, 2015 letter, together with the executed errata sheet, with "Deposition Errata Sheet Attachment" (hereafter "Keating Errata Sheet") is attached hereto as Exhibit 3 (without enclosed deposition transcript).

[5] *Id*.

7037490 v2

5.      Keating's alteration of his testimony prejudices Defendants because the changes are material, because they are unjustified, and because they would deprive Defendants of testimony Defendants would otherwise rely on.

6.      For example, Keating was questioned numerous times regarding the risk management (*i.e.* hedging) Cargill was required to provide pursuant to the Agreement between Cargill and Defendants.[6]   The risk management questions revolved around cattle and corn hedging and options.  Having had time to craft more artful responses, Keating attempts to add "clarifications" to his answers.  He says **now** the risk management requirements related only "to the final price of meat products" or "the final price of meat."[7]  What the "final price" of meat or meat products has to do with risk management is a mystery, as Cargill was supposed to manage the risk of "input costs" – cattle and corn.

7.      Keating also seeks to change his testimony to establish that Cargill Meat Solutions and Cargill Beef do not provide, but merely "engage in," risk management.  According to the changed answers, it is now Cargill Risk Management – *not* the Plaintiff – that provides all "risk management advice and tools."[8]   Had this unlikely testimony been offered at the deposition, Defendants would have had a chance to challenge it.

8.      The material alterations contained in Keating's errata sheet to his deposition are contained in the following table.  All of the changes should be struck.

---

[6] Cargill recently filed a motion for partial summary judgment on the risk management issue.  *See* [Doc. 127].  Keating's changed testimony is now less inconsistent with the "statements of undisputed fact" set forth in that motion.

[7] Keating Errata Sheet at 65:15; 81:1; 82:7; 82:13; 82:23; 89:8l; 91:13; 91:18; 92:9; and 94:9, Exhibit 3.

[8] *Id*. at 82:7; 20:23; 93:4-6, Exhibit 3.

7037490 v2

| Change # (for reference) | Page & Line | Actual Testimony | Altered Testimony (as per errata sheet) |
|---|---|---|---|
| 1) | 272, line 8 | **Q.** So, Farrin Watt would have done for [Cargill affiliate][9] what he did for natural cattle?<br><br>**A.** For corn.<br><br>**Q.** For corn.<br><br>**A.** Yes.<br><br>**Q.** Okay. And would he have been given instructions to do it differently for [Cargill affiliate] than he did for the natural cattle?<br><br>**A. No.** | **A. I don't know.** |
| 2) | 106, line 7 | **Q.** Okay. And who – and the risk strategies would be based upon the customer of Cargill or the – or the partner that you're dealing with, correct?<br><br>Ms. Dyer: Objection, compound.<br><br>**A. Yes.** | **A. The strategies would be based on the reason we are managing the risk in the first place which could be determined by a number of factors.** |
| 3) | 82, line 7 | **Q.** Now, is it the philosophy within Cargill Meat Solutions or Cargill Beef that your groups are dedicated provider of risk management solutions, would that be accurate? | |

---

[9] In order to prevent the unnecessary filing of this Motion under seal, Defendants have replaced potentially confidential information with "Cargill affiliate."

| | | | |
|---|---|---|---|
| | | Ms. Dyer: Object to form.<br><br>**A. Yes.** | **A. It is accurate to say that Cargill Beef and Cargill Meat Solutions engage in risk management activities for us and as a component of meat prices.** |
| 4) | 20, line 23 | **Q.** Cargill Meat Solutions also provides risk management, correct?<br><br>**A.** Correct. | **A. It engages in risk management.** |
| 5) | 234, line 22 | **Q.** Well, I'm going to rephrase. I'm not sure I remember what my question is now, but, if a party or an entity has 30,000 head of cattle on feed and then don't lock in their input price on corn, then they need to have deep enough pockets to withstand the price of corn increasing dramatically while those cattle are on feed, correct?<br><br>Ms. Dyer: Same objection.<br><br>**A. Correct.  I don't know it's up to them.** | **A. I don't know.** |
| 6) | 205, line 25 | **Q.** Have you ever seen – well, I'll ask it both ways. Have you seen 50/50 trim put into FTB?<br><br>**A.** Yes.<br><br>**Q.** Okay. Have you seen situations where FTB raw materials would be put into 50/50 trim?<br><br>**A.** Yes. | |

- 5 -

|  |  | **Q.** Okay. So it can bounce back and forth interchangeably?<br><br>**A.** Yes. | **A. Yes, 50/50 trim is usually used for ground beef production, but could sometimes be used for FTB production depending on production and other circumstances.** |
|---|---|---|---|

## ARGUMENT

It is well established in this Court that Federal Rule of Civil Procedure 30(e) ("Rule 30(e)") does not allow a party to "rewrite portions of a deposition."[10]  The Tenth Circuit (and the District Court of Kansas[11]) maintains a "restrictive view of deposition changes that can be made pursuant to Rule 30(e)."[12]  The Tenth Circuit memorialized its "distaste for a broad reading of Rule 30(e)"[13] in *Garcia v. Pueblo Country Club*[14]:

> **We do not condone counsel's allowing for material changes to deposition testimony and certainly do not approve of the use of such altered testimony that is controverted by the original testimony**. *See, e.g., Coleman v. Southern Pac. Transp. Co.*, 997 F. Supp. 1197, 1205 (D. Ariz. 1998) (discrediting deposition testimony directly contradicted by errata sheet); *S.E.C. v. Parkersburg Wireless, L.L.C.*, 156 F.R.D. 529, 535 (D.D.C. 1994) (noting modern trend in which courts do not allow a party "to make any substantive change she so desires" in deposition

---

[10] *See Rios v. Welch,* 856 F. Supp. 1499, 1502 (D. Kan. 1994), *aff'd, Rios v. Bigler*, 67 F.3d 1543 (10th Cir. 1995).

[11] *See Summerhouse*, 216 F.R.D. at 505.

[12] *Price v. City of Wichita*, 2012 WL 289453, at *6 (D. Kan. Jan. 27, 2014).

[13] *Summerhouse*, 216 F.R.D. at 506.

[14] 299 F.3d 1233, 1242 n. 5 (10th Cir. 2002).

testimony); *Rios v. Bigler*, 847 F. Supp. 1538, 1546-47 (D. Kan. 1994) (stating that the court will consider only those changes which clarify the deposition, and not those which materially alter it); *Greenway v. International Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992) (suppressing deponent's attempt to rewrite material answers given in deposition); *Barlow v. Esselte Pendaflex Corp.*, 111 F.R.D. 404, 406 (M.D.N.C. 1986) (refusing to consider changes to deposition that were made in bad faith). Of all these courts, perhaps the *Greenway* court expressed the purpose of Rule 30(e) best:

> The purpose of Rule 30(e) is obvious. Should the reporter make a substantive error, i.e., he reported "yes" but I said "no," or a formal error, i.e., he reported the name to be "Lawrence Smith" but the proper name is "Laurence Smith," then corrections by the deponent would be in order. **The Rule cannot be interpreted to allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all then return home and plan artful responses. Depositions differ from interrogatories in that regard. A deposition is not a take home examination.**[15]

The three-part test recited in *Burns v. Board of County Comm'rs Jackson County,*[16] where the Tenth Circuit "held that Rule 30(e) deposition corrections should be treated the same as sham affidavits" and weighed according to the factors established in *Franks v. Nimmo,*[17] controls. The Court must examine: (i) whether the witness was available for cross-examination; (ii) whether the changes are the result of newly discovered evidence; and (iii) whether the earlier testimony reflects confusion that the corrections need to clarify.[18]

This Court has applied *Burns* to prevent far less egregious rewrites than what Cargill proposes. In *Price v. City of Wichita*, No. 12-1432-CM-DJW, 2013 WL 6796492 (D. Kan. Dec. 20, 2013), the Court addressed only two, relatively minor corrections. First, a witness clarified

---

[15] *Id.* (emphasis added).

[16] 330 F.3d 1275, 1282 (10th Cir. 2003).

[17] 796 F.2d 1230, 1237 (10th Cir. 1986).

[18] *Burns*, 330 F.3d at 1282.

dates and explained that he had "refreshed [his] own recollection." *Id.* at *17.   Second, he changed his testimony of "I'm sure we had a conversation at that point" to "I don't specifically recall" having a conversation. *Id.* at *18.   His sole reason for this latter change?  "Clarification." *Id.* at *21.   The Court found the change material and the explanation suspect. *Id.*   Under the *Burns* factors, it did not appear the witness was cross-examined on this particular issue, there was no suggestion the correction was based on new evidence, and the change did not reflect any confusion at the deposition that would need clarification. *Id.*   Thus, the correction was disregarded.

Cargill uses the same, cryptic "clarification" to explain its six material changes and satisfies none of the *Burns* factors.

### A.  __The six Keating errata are material.__

"A change is material if it bears on an essential element of a claim or defense."[19]   Here, the six Keating errata are material.

Change No. 1:  Cargill failed to determine and implement risk management (*i.e.* hedging) as required by the Agreement.  This allegation is premised on, among other things, legitimate inquiries into whether Cargill made undisclosed and unauthorized allocations of the gains and losses among Defendants and other unrelated entities including, without limitation, a Cargill affiliate.   Defendants' allegations regarding Cargill's failures are bolstered by the fact that Defendants incurred significant losses on corn hedging at a time when Cargill entities realized gains.   The contemporaneous trades at issue were performed by the same trader using similar

---

[19] *Price*, 2012 WL 289453, at *7 (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) ("An issue of fact is "material" if under the substantive law it is essential to the proper disposition of the claim.")).

7037490 v2

strategies.[20]  Cargill refuses to produce the documents that reflect these trades.  During Keating's deposition, he was asked whether instructions given to Farrin Watt, the unlicensed, unregistered Cargill trader performing corn hedging, would have been different for the trades performed for Defendants' benefit than they were for the trades performed the Cargill affiliate.   In his deposition, Keating answered the instructions given to Watt would <u>not</u> have been different.  The impact of the erratum is obvious.

Change No. 2:  Further proof of Cargill's failure to determine and implement appropriate hedging (risk) strategies is that Watt, the unlicensed and unregistered corn trader used by Cargill, had no knowledge who the Defendants were and had never had a conversation with them about their risk tolerance.  Not knowing the Defendants at all, Watt could hardly provide a proper risk management strategy for them.   In his deposition, Keating supported Defendants' point, testifying Cargill's risk strategies would be "based upon the customer . . . . "  His erratum moves entirely away from that concession.

Changes Nos. 3 and 4:  As set forth in Fact No. 7 above, Keating attempts to change his testimony to establish that Cargill Meat Solutions and Cargill Beef do not "provide," but merely "engage in," risk management.  Keating's errata take the position that *Cargill Risk Management*, *<u>not</u> Cargill Meat Solutions or Cargill Beef*, would "provide" the risk management activities. Stated another way, Keating uses the errata to inject the theme that Defendants "got the wrong company."  At the outset, Keating is not allowed to do this.  Yet another problem presented for Defendants is that Keating's change comes *after the close of discovery*.

Also troubling, Keating now attempts to define risk management for the Defendants as a piece of a larger whole – "a component of meat prices."  Defendants have no idea what "meat

---

[20] For a complete discussion of Defendants' belief that Cargill may have been allocating profits and losses, Defendants respectfully direct the Court to Defendants' *Reply to Plaintiff's Opposition to Defendants' Motion to Compel* at 6 [Doc. 108-1].

prices" have to do with the risk management that was to be implemented for Defendants' benefit. The Agreement's risk management ( hedging) requirements related solely to inputs – the cost of cattle and corn, not "meat prices."  Had Keating trotted this out in his deposition, Defendants would have been able to explore this novel concept.  But they did not have that opportunity.  It is unfair for Keating's errata to force it on them now.

Change No. 5:  Cargill also failed to disclose to Defendants its risk management/futures activities.  Specifically, it failed to disclose that months went by when Cargill was not hedging corn at all.  The Cargill trader himself admitted that failure to hedge while trying to time the market is not risk management, but speculation![21]  Cargill was well aware the Defendants were not in the financial position to withstand heavy swings in input prices, and that they placed their trust and confidence in Cargill to hedge those inputs.  Keating's testimony confirms Cargill knew this risk to Defendants was substantial:  he agreed that 30,000 head of cattle on feed at one time would require a significant amount of capital to withstand dramatic swings in corn prices if no hedges were placed.[22]  Now, he would replace his answer that begins with "correct." (!) with one that says only, "I don't know."

Change No. 6:  As a joint-venturer with Defendants, Cargill was obligated to tell them what was occurring with the processing of the jointly-owned cattle.  Change No. 6 relates to this duty, it waffles on a previously unequivocal response, and Defendants have no opportunity to follow up on Mr. Keating's "other circumstances."

---

[21] *See* Watt Deposition at 144 – 145, Exhibit 2.

[22] With hedges in place, if the price of actual corn went up a dollar per bushel in the feedlots, it would have been offset by a risk-management position on corn.

7037490 v2

**B.  The six Keating errata fail the *Burns* test.**

First, Keating was available for cross-examination by Cargill's counsel, but Cargill chose to not take advantage of this opportunity.  In fact, Cargill chose not to cross-examine Keating at all!  This factor weighs in favor of striking the changes.

Second, Keating's "clarifications" point toward no newly discovered evidence.  Certainly, no newly discovered evidence has been produced to Defendants.  In fact, rather than clarify the testimony, the material changes either confuse it – by discussing issues that were not asked about (such as the risk management relating to "the final price of meat") – or contradict it.  These are not mere clarifications but wholesale changes.

Finally, Keating was not confused.  As in *Burns*, Keating's "answers to the direct questions … do not reflect any obvious confusion … that the corrections need to clarify."[23]  Keating understood what he was being asked.  He was not indecisive; he was not inconsistent.  Keating is college educated, he understood he was under oath, and he understood that he could ask that a question be clarified if he did not understand it.[24]  Keating was fine with the questions; it is the answers he does not like.

Keating made material changes that fail all three of the Tenth Circuit factors.

**CONCLUSION**

It is commonplace for a complaining party in this situation to ask for alternative relief— the chance to re-depose the witness.  Defendants do not seek that here.  Mr. Keating's efforts are blatant.  The president of a multi-billion dollar-corporation, he least of all is entitled to thumb his nose at Cargill's discovery obligations.  His testimony is binding on him, and it is binding on

---

[23] *Burns*, 330 F.3d at 1282.

[24] Keating Deposition at 5:4-10 and 5:19-24, Exhibit 1.

Cargill.  Keating gets no re-do.  Neither does his counsel get to use this fictional account of his deposition testimony.  Defendants ask that the changes be struck.

Respectfully submitted,

 /s/ Zach Chaffee-McClure
William R. Sampson, #07418
Zach Chaffee-McClure, #23479
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, Missouri 67108-2613
Telephone: (816) 474-6550
Facsimile:  (816) 421-5547
wsampson@shb.com
zmcclure@shb.com

and

J. Clay Christensen (*pro hac vice*)
Jonathan M. Miles (*pro hac vice*)
CHRISTENSEN LAW GROUP, P.L.L.C.
The Parkway Building
3401 N.W. 63rd Street, Suite 600
Oklahoma City, Oklahoma  73116
Telephone:  (405) 232-2020
Facsimile:  (405) 236-1012
clay@christensenlawgroup.com
jon@christensenlawgroup.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2015, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send a notice of electronic filing to all persons registered for ECF as of that date.

  /s/ Zach Chaffee-McClure
*Attorney for Defendants*

- 12 -

7037490 v2