## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

CARGILL MEAT SOLUTIONS              )
CORPORATION,                        )
                                    )
                 Plaintiff,         )
                                    )
v.                                  )    Case No. 13-CV-1168-EFM-TJJ
                                    )
PREMIUM BEEF FEEDERS, LLC, et al.,  )
                                    )
Defendants.                         )
                                    )
                                    )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendants' Motion for Leave to Amend Their

Combined Answer and Counterclaim (ECF No. 120).  Defendants seek leave to amend their

counterclaim to add a claim for breach of fiduciary duty without adding any new factual

allegations.  Plaintiff opposes the motion on a number of grounds.  For the following reasons, the

Court grants the motion.

## Relevant Background

This is another in a series of motions that the parties have filed following the April 9,

2015 deposition of former Cargill employee Farrin Watt.[1]  Defendants contend that through Mr.

Watt's testimony, they first learned that (1) Plaintiff had failed to hedge corn inputs on the

parties' joint cattle venture between May, 2011 and August, 2011, and (2) Plaintiff used an

unlicensed, untrained, and incompetent employee to engage in market speculation on corn prices

for the parties' joint venture cattle.  Defendants' original counterclaim alleges that Plaintiff

---

[1] The Watt deposition was taken one week prior to the discovery deadline of April 16,
2015 that was then in effect. *See* ECF No. 77.

breached the parties' May 24, 2011 Cattle Procurement and Feeding Arrangement ("the Cargill

Agreement"), and that Plaintiff breached its duty to disclose and/or duties of good faith and fair

dealing that it owed to Defendants under the Cargill Agreement and as a party to a joint venture

with Defendants.   In the instant motion, Defendants assert that the information they learned

from Mr. Watt gives rise to an additional allegation in their counterclaim, that "Cargill's actions

constitute a breach of the fiduciary duties owed to Defendants by Cargill as a party to a joint

venture with Defendants."[2]

## Legal Standard

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial.

It provides that the parties may amend a pleading once "as a matter of course" before trial if they

do so within (A) 21 days after serving the pleading, or (B) "if the pleading is one to which a

responsive pleading is required," 21 days after service of the responsive pleading or a motion

under Fed. R. Civ. P. 12(b), (e), or (f), whichever is earlier.[3]  Other amendments are allowed

"only with the opposing party's written consent or the court's leave."[4]  Rule 15(a)(2) also

instructs that the court "should freely give leave when justice so requires."[5]  The court's decision

to grant leave to amend a complaint, after the permissive period, is within the trial court's

discretion and will not be disturbed absent an abuse of that discretion.[6]  The court may deny

leave to amend upon a showing of "undue delay, bad faith or dilatory motive on the part of the

---

[2] Proposed Amended Counterclaim (ECF No. 120-1) at 10.

[3] Fed. R. Civ. P. 15(a)(1).

[4] Fed. R. Civ. P. 15(a)(2).

[5] *Id*.; *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).

[6] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).

movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[7]

When the deadline for amending pleadings set in the scheduling order has passed, as is the case here,[8] Federal Rule of Civil Procedure 16(b)(4) is implicated.  Rule 16(b)(4) provides that a scheduling order "may be modified only for good cause and with the judge's consent."[9]

The Court will apply a two-step analysis based on both Rule 16(b) and Rule 15(a) when faced with a request to amend a pleading past the scheduling order deadline.[10]  In other words, the Court will first determine whether the moving party has established "good cause" within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion.  Only after determining that good cause has been established will the Court proceed to determine if movant has satisfied the more lenient Rule 15(a) standard.[11]

---

[7] *Id*. (quoting *Foman*, 371 U.S. at 182).

[8] The Amended Scheduling Order deadline for motions to amend the pleadings was November 29, 2014. *See* ECF No. 49 at 2.  Defendants did not file their motion for leave to amend until May 22, 2015.

[9] Fed. R. Civ. P. 16(b)(4).  In addition, the Amended Scheduling Order in this case explicitly directs that the schedule "shall not be modified except by leave of Court upon a showing of good cause."  ECF No. 49 at 2.

[10] *See, e.g., Lone Star Steakhouse and Saloon, Inc. v. Liberty Mut. Ins. Group,* No. 12-1185-WEB, 2003 WL 21659663, at *2 (D. Kan. March 13, 2003).

[11] *See Boatright v. Larned State Hosp.*, No. 05-3183-JAR, 2007 WL 2693674, at *6 (D. Kan. Sept. 10, 2007 (recognizing the Rule 15(a) standard as more lenient than the "good cause" standard of Rule 16(b)).

To establish good cause under Rule 16(b)(4), the moving party must show that the deadline could not have been met even if it had acted with due diligence.[12]  The lack of prejudice to the nonmovant does not show good cause.[13]  A district court's determination as to whether a party has established good cause sufficient to modify a scheduling order amendment deadline is within the court's discretion, and will be reviewed only for the abuse of discretion.[14]

## Good Cause under Rule 16(b)

The Court begins by reviewing Defendants' motion under the good cause standard of Rule 16(b).  Defendants assert that good cause exists for their failure to amend their counterclaim before the November 29, 2014 deadline.  According to Defendants, the facts they learned from Mr. Watt's deposition were new and revelatory; before the deposition, Defendants were unaware of (1) Cargill's lack of corn hedging, (2) its use of an employee who was not registered, licensed, or trained as a commodities trainer, and (3) that same employee's lack of knowledge of Defendants' identity despite having been assigned the joint venture cattle.  Taken together, Defendants assert that these facts provide them with a basis for amending their counterclaim to state a cause of action for breach of fiduciary duty.[15]

---

[12] *Id.* at *5.

[13] *Lone Star Steakhouse*, 2003 WL 21659663, at *2.

[14] *Ingle v. Dryer*, No. 07-cv-00438-LTB-CBS, 2008 WL 1744337, at *2 (D. Colo. April 11, 2008).

[15] Defendants assert that their original counterclaim pleaded breach of fiduciary duty, but if the Court finds otherwise Defendants seek leave to specifically add the claim.  *See* ECF No. 120 at 5.  The Court finds that Defendants' original counterclaim (ECF No. 27 at 9-10) makes no explicit reference to a breach of fiduciary duty, and the Court further finds that Defendants' original counterclaim did not include a claim for breach of fiduciary duties.

Plaintiff contends that Defendants have not shown good cause.  According to Plaintiff, Defendants have had this allegedly new information in their possession since November 10, 2014, when Plaintiff produced Exhibit 85.  Plaintiff describes Exhibit 85 as an 18-page "summary report of every cattle futures, cattle options, and corn futures position taken for the cattle subject to the Agreement."[16]  Plaintiff asserts that Defendants used Exhibit 85 in a deposition they took in February, 2015.

Defendants add some context to Plaintiff's argument.  While Defendants do not dispute that Plaintiff produced Exhibit 85 in November, 2014, Plaintiff did so as part of a 20,000-page rolling production.  The document is a summary that was created for this lawsuit, and it does not contain the underlying information that supports the summary.  On May 22, 2015, Plaintiff replaced Exhibit 85 with a "corrected and expanded" version.  More importantly, the February, 2015 deposition that Plaintiff mentions was the deposition of a Cargill representative who is or was in charge of risk management accounting.[17]  He was not able to identify Exhibit 85, and he testified that there was no way to tell whether it related to jointly-owned cattle or the period of time it covered.[18]  Defendants also presented Exhibit 85 during the depositions of Ken Bull, the former Cargill representative who executed the Cargill Agreement on behalf of Cargill, and to John Keating, President of Cargill Beef.  Both denied having seen the document before; the former also stated that he did not know what the document was, and the latter said that he

---

[16] Plaintiff's Response (ECF No. 153) at 7.

[17] *See* ECF No. 153-6 (Randy Carlgren deposition excerpt).

[18] *Id.*

5

understood cattle and corn futures but did not understand the summary document that was

created as Exhibit 85.[19]

The Court rejects Plaintiff's argument that before April 9, 2015, Defendants knew the

facts that Farrin Watt revealed that day during his deposition.  Plaintiff hangs its hat on the

summary report (Exhibit 85) that it produced on November 10, 2014, but even Plaintiff's own

President said that he could not understand it, and the report was later corrected and expanded.

Moreover, it is undisputed that Defendants did not learn of Watt's lack of licensing, registration,

and other experience until his deposition.  Concomitantly, the Court finds that Defendants have

demonstrated good cause for having failed to move to amend their counterclaim before the

Amended Scheduling Order deadline of November 29, 2014.[20]

### Whether Defendants Have Met the Rule 15 Standard

As noted above, the standard for granting leave to amend is lenient; courts are directed to

freely give leave when justice so requires.  Plaintiff argues that the Court should withhold leave,

however, on the grounds of undue delay, futility, and undue prejudice.

A.    Undue Delay

Plaintiff's argument on undue delay is identical to its argument on good cause, which the

Court has rejected.  Plaintiff adds another allegation, however, that Defendants are "pleading

---

[19] ECF No. 167-2 at 2; ECF No. 167-3 at 2.

[20] The Court summarily rejects Plaintiff's other arguments relating to good cause. Plaintiff complains that Defendants let the November 29, 2014 deadline pass without trying to amend it, but Plaintiff offers no plausible reason why Defendants would have done so.  Plaintiff also argues that Defendants could have included a breach of fiduciary duty claim in their original counterclaim, but does not set forth the factual basis Defendants would have had to make such a claim.

alternative theories '*seriatim*' in an attempt to evade summary judgment."[21]  The Court finds this

allegation to be unsupported.  Defendants have made no prior effort to amend their counterclaim.

They have done so now because they learned relevant facts (belatedly, they contend) during the

deposition of a Cargill witness, and they believe that those facts justify an additional theory of

liability.

B.      Futility

Next, Plaintiff contends that the Court should deny Defendants leave to amend because

their purported claim would be futile.  Plaintiff's argument is two-fold.  First, Plaintiff contends

that Section 9 of the Cargill Agreement expresses the parties' intent not to form any kind of

fiduciary relationship.  Section 9 states as follows:

> 9.      Independent Parties.  PBF, PPF and Cargill agree that this Agreement does
> not, and is not intended to create a partnership.  None of the Parties shall
> be deemed to be the agent of the other Parties.  Neither PBF, PPF nor
> Cargill shall at any time bind any other Party to any agreement, debt or
> obligation or otherwise act for any other Party.  In no event will the Parties
> be liable for any debt or obligations of the other Parties outside of the joint
> payments owed to third parties as described under Section 6, herein.[22]

Plaintiff contends that, through this language, Defendants expressly disclaimed any

agency relationship and as a result "they cannot state a claim for breach of fiduciary duty upon

which relief can be granted."[23]  In addition, Plaintiff argues that Kansas law does not permit

Defendants to assert a tort claim for the same conduct on which they base their breach of

contract claim, and that the Cargill Agreement expressly permitted Cargill to act as it did through

---

[21] ECF No. 153 at 13.

[22] ECF No. 27-1 § 9.

[23] ECF No. 153 at 15.

7

Watt because the Agreement gave Cargill sole responsibility to determine any risk management strategies.

Defendants disagree that Section 9 precludes the existence of a fiduciary relationship. They point out that the language disclaims only two things:  a partnership and agency as to third parties.  Defendants assert that the parties' conduct clearly demonstrates that they were engaged in a joint venture.  Under Kansas law, a joint venture is defined in part as "an association of persons with intent, by way of contract, express or implied, to engage in and carry out a single business venture for joint profit, for which purpose they combine their efforts, property, money, skill and knowledge, without creating a partnership."[24]  Keeping in mind that the issue at hand is whether to permit an amended pleading, and not whether Defendants have proved the ultimate issue, the Court finds that the Cargill Agreement does not preclude Defendants' proposed amendment.

Similarly, Kansas law clearly allows a party to plead a breach of contract claim along with independent torts based on the same facts.[25]  The issue before the Court is not whether Defendants may recover on both theories based on the same facts, but merely whether they are entitled to plead alternative theories.

The Court also rejects Plaintiff's contention that giving a party responsibility for performing a function under an agreement gives that party *carte blanche* to perform the function poorly or not at all.  The Cargill Agreement does give Plaintiff "sole responsibility to determine and implement any risk management (i.e. hedging) strategies,"[26] but it also expresses the parties'

---

[24] *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 596 P. 2d 816, 822 (Kan. 1979) (quoting 46 Am. Jur. 2d Joint Ventures § 1).

[25] *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 146 (Kan. 2003).

[26] ECF No. 27-1 § 4.

"desire to collaborate on the procurement of natural cattle to be toll processed by Cargill on behalf of [Defendants] or the [Defendants]' agents or partners and to share equally in the profits or losses of such Cattle being fed to finish."[27]  The Cargill Agreement does not stand in the way of Defendants' amendment.

Plaintiff's second argument under futility is that a breach of fiduciary claim, which carries a two-year statute of limitations,[28] is barred because it accrued no later than 2011. Plaintiff provides three alternative dates of accrual:  (1) May, 2011 when Defendants finalized the sale of 51% of Premium Natural Beef to Meyer; (2) summer, 2011 when cattle under the Agreement first began experiencing losses; or (3) September, 2011 when Defendants were in discussions with Meyer over the price paid for the cattle.[29]  Plaintiff offers no explanation for why these events would have put Defendants on notice of the alleged deficiencies with respect to corn hedging.

Plaintiff has provided no evidence which would call into doubt that Defendants first learned of Cargill's alleged failure to hedge corn through Mr. Watt's deposition testimony. Accordingly, the Court rejects Plaintiff's argument that amendment is futile because a breach of fiduciary duty claim is barred by the statute of limitation.[30]

C.     Undue Prejudice

---

[27] *Id.* at 1.

[28] *See* K.S.A. § 60-513(a)(4).

[29] ECF No. 153 at 18.

[30] Defendants also contend that Plaintiff's failure to disclose constitutes concealment, which tolls the limitations period.  The Court does not reach this issue.

Plaintiff asserts that it would suffer undue prejudice if the Court allows Defendants to amend their counterclaim.  The first form of prejudice Plaintiff alleges is that it "would need to *consider* a number of discovery tools including *whether* to issue a new round of interrogatories, *whether* to depose Freeman and Duff about those answers and about the fiduciary claim in general, and *whether* to submit requests for admissions."[31]  The Court does not find that Plaintiff's speculation about unplanned discovery rises to the level of prejudice.

Plaintiff also alleges that Defendants' amendment would cause undue burden in the form of new pleading burdens.  Plaintiff asserts that it "most likely will be subject to further motion practice."  Again, Plaintiff offers mere speculation.  The Court notes that 59 motions have been filed in this case, with the current dispositive motion deadline still more than one month away and no trial date yet set.  The Court can consider and order whatever limited adjustments may be necessary to the schedule in this case in order to prevent undue prejudice to any party.  The Court does not find the possibility that one or both parties will file more motions constitutes undue prejudice.

**IT IS THEREFORE ORDERED THAT** Defendants' Motion for Leave to Amend Their Combined Answer and Counterclaim (ECF No. 120) is granted.  Defendants shall electronically file their proposed Amended Answer and Counterclaim within **four (4) days** of the date of this Order.

---

[31] ECF No. 153 at 19 (emphasis added).

IT IS SO ORDERED.

Dated this 10th day of August, 2015, at Kansas City, Kansas.

<u>s/  Teresa J. James</u>
Teresa J. James
U. S. Magistrate Judge