# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

CARGILL MEAT SOLUTIONS
CORPORATION,

    *Plaintiff,*

vs.

PREMIUM BEEF FEEDERS, LLC, and
POWER PLUS BEEF FEEDERS, LLC
d/b/a POWER PLUS FEEDERS, LLC,

    *Defendants.*

Case No. 13-1168-EFM-TJJ

## MEMORANDUM AND ORDER

Plaintiff Cargill Meat Solutions Corporation ("Cargill") filed suit against Defendants Premium Beef Feeders, LLC and Power Plus Beef Feeders, LLC. Cargill alleges breach of contract arising from the parties' Cattle Procurement and Feeding Agreement. The Defendants' answer included two counterclaims. In relevant part, Defendants' Count I alleges breach of both contract and the implied duty of good faith and fair dealing. Count II alleges breach of fiduciary duty. Before the Court are three motions filed by Cargill in response to the Defendants' counterclaims: (1) Cargill's motion to dismiss the breach of fiduciary duty claim (Doc. 219); (2) Cargill's motion for partial summary judgment on the claims for breach of contract and the duty of good faith and fair dealing (Doc. 127); and (3) Cargill's motion to exclude expert testimony (Doc. 130). For the reasons stated below, the Court denies Cargill's motion to dismiss and

motion for partial summary judgment. The Court grants in part and denies in part Cargill's motion to exclude expert testimony.

## I. Factual and Procedural Background[1]

The Defendants specialize in procuring, feeding, and selling cattle. The Defendants and Cargill formed an agreement in which the Defendants would process and slaughter cattle through Cargill's processing plants. The agreement was embodied in the Cattle Procurement and Feeding Arrangement ("CPFA") on May 24, 2011. Under the CPFA, Cargill and the Defendants were to (1) jointly hold title to all cattle purchased pursuant to the agreement; (2) share equally in the profits or losses of the cattle; and (3) jointly operate together to procure, feed, and toll process the cattle. The CPFA also contained a risk management provision that provides:

> The Parties agree that Cargill will be solely responsible for determining and implementing any risk management (i.e. hedging) strategies for the Cattle on feed with the Feedlot Vendor, and the grain associated with feeding the Cattle.

Cargill implemented hedges on cattle as early as March 2011. Cargill did not implement hedges on corn until August 2011. Farrin Watt, who handled the risk management for Cargill, stated that he would not typically wait so long to implement corn hedges. Watt explained that he was "being patient" because corn prices were high.

The CPFA resulted in significant losses for the Defendants. Due to these losses, the Defendants were unable to timely pay their debts. And when the Defendants failed to pay Cargill their share of the losses, Cargill brought suit in Kansas state court alleging breach of the CPFA. The Defendants timely removed the case to this Court and brought two counterclaims

---

[1] Facts relevant to Cargill's motion dismiss are taken from the Defendants' First Amended Combined Answer and Counterclaim, as well as the exhibits attached thereto, and are accepted as true. With regards to Cargill's motion for partial summary judgment, the Court has set forth only those uncontroverted facts required to reach its decision, and they are related in the light most favorable to the non-moving party.

against Cargill. Count I alleges breach of contract, joint venture, and the implied duty of good faith and fair dealing. Count II alleges breach of fiduciary duty. Cargill now moves for dismissal of the Defendants' breach of fiduciary duty claim. The Defendants allege that Cargill owed them fiduciary duties because the CPFA constituted a joint venture. Cargill contends that the Defendants fail to state a claim upon which relief can be granted because there was no joint venture and no other facts would give rise to fiduciary duties. Cargill also moves for summary judgment on the portion of the Defendants' contract and good faith and fair dealing claims that arise out of Cargill's risk management strategies.

## II. Legal Standard

**A. Motion to Dismiss**

Under Rule 12(b)(6), a defendant may move for dismissal of any claim for which the plaintiff has failed to state a claim upon which relief can be granted. Upon such a motion, the Court must decide "whether the complaint contains enough facts to state a claim to relief that is plausible on its face."[2] A claim is facially plausible if the plaintiff pleads facts sufficient for the Court to reasonably infer that the defendant is liable for the alleged misconduct.[3] The plausibility standard reflects the requirement in Rule 8 that pleadings provide defendants with fair notice of the nature of claims as well as the grounds on which each claim rests.[4] The Court must accept all of the factual allegations in the complaint as true.[5] But the Court need not afford such a

---

[2] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[3] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

[4] *See Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008); *see also* Fed. R. Civ. P. 8(a)(2).

[5] *Iqbal*, 556 U.S. at 678-79.

presumption to legal conclusions.⁶ If the allegations in the complaint are "so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible."⁷

**B. Motion for Partial Summary Judgment**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.⁸ A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidenced permits a reasonable jury to decide the issue in either party's favor.⁹ The moving party bears the initial burden of proof, and must show the lack of evidence on an essential element of the claim.¹⁰ If the moving party carries this initial burden, the non-moving party that bears the burden of persuasion at trial may not simply rest on its pleading but must instead "set forth specific facts" from which a rational trier of fact could find for the non-moving party.¹¹ These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits; conclusory allegations alone cannot survive a motion for summary judgment.¹² To survive summary judgment, the non-moving party's evidence must be

---

⁶ *Id.*

⁷ *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 570) (internal quotation marks omitted).

⁸ Fed. R. Civ. P. 56(a).

⁹ *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

¹⁰ *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322-23 (1986)).

¹¹ *Id.* (citing Fed. R. Civ. P. 56(e)).

¹² *Mitchell v. City of Moore*, 218 F.3d 1190, 1197-98 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th. Cir. 1998)).

admissible.[13] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[14]

### III.    Analysis

**A. Motion to Dismiss**

Cargill moves to dismiss the Defendants' counterclaim for breach of fiduciary duty. To prove a breach of a fiduciary duty under Kansas law, the Defendants must prove that: (1) a fiduciary relationship existed between Cargill and the Defendants; (2) Cargill had a duty to the Defendants based on the fiduciary relationship; and (3) Cargill breached that duty.[15] Cargill claims that the Defendants fail to state a claim for breach of fiduciary duty because they did not adequately plead the existence of a fiduciary relationship. The Defendants respond by arguing that the CPFA constituted a joint venture, which is a fiduciary relationship. Alternatively, the Defendants argue that even if the CPFA was not a joint venture, a fiduciary relationship was implied in law.

"Whether a fiduciary relationship exists depends on the facts and circumstances of each case."[16] Such relationships are never presumed and should be extended reluctantly to commercial transactions.[17] The burden of proving a fiduciary relationship rests on the party

---

[13] *Adams v. Am. Guar. & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000).

[14] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[15] *Peterson ex rel. Peterson v. Cmty. Living Opportunities, Inc.*, 2008 WL 5401456, at *3, 197 P.3d 905 (Kan. App. 2008) (unpublished table opinion).

[16] *Dana v. Heartland Mgmt. Co.*, 48 Kan. App. 2d 1048, 1067, 301 P.3d 772, 785 (2013) (citing *Denison State Bank v. Madeira*, 230 Kan. 684, 691, 640 P.2d 1235, 1241 (1982)).

[17] *Flight Concepts Ltd. P'ship v. Boeing Co.*, 819 F. Sup. 1535, 1545 (D. Kan. 1993).

asserting its existence.[18] Kansas recognizes two types of fiduciary relationships: (1) those specifically created by contract, such as principal and agent; and (2) those implied in law due to the facts surrounding the involved transactions and the parties' relationship.[19] If the parties' agreement constituted a joint venture, then the first type of fiduciary relationship exists.[20]

Cargill argues that the Defendants have not adequately alleged either type of fiduciary relationship. The Defendants contend that they have sufficiently alleged the existence of a joint venture. Alternatively, the Defendants argue that they sufficiently alleged the existence of the second category of fiduciary relationships, one implied in law.

*1. Fiduciary Relationship Specifically Created by Contract*

The Defendants claim the CPFA constituted a joint venture. But Cargill argues that the plain language of the CPFA precludes the existence of a joint venture. Cargill relies on the "Independent Parties" provision of the CPFA in making this claim. The "Independent Parties" provision states that:

> [The Defendants] and Cargill agree that this agreement does not, and is not intended to create a partnership. None of the Parties shall be deemed to be an agent of the other Parties. Neither [the Defendants] nor Cargill shall at any time bind any other Party to any agreement, debt or obligation or otherwise act for any other Party. In no event will the parties be liable for any debt or obligations of the other Parties outside of the joint payments owed to third parties as described under Section 6, herein.

Cargill's argument goes as follows. Parties to a joint venture "stand in the relation of principal, as well as agent, as to one another."[21] And the "Independent Parties" provision explicitly

---

[18] *Dana*, 48 Kan. App. 2d at 1067, 301 P.3d at 785.

[19] *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F. Supp. 1041, 1052-53 (D. Kan. 1990).

[20] *Id.* at 1053.

[21] 46 Am. Jur. 2d *Joint Ventures* § 16 (2015).

declares that neither party shall be deemed the other's agent. Thus, the contract precludes the existence of a joint venture because parties in a joint venture are each other's agents, and the CPFA disclaims an agency relationship. As Cargill aptly summarizes its argument, "[a]s agency is a necessary component of joint ventures, it is impossible to preclude the creation of an 'agency' relationship while at the same time creating a joint venture." On the surface, Cargill's argument is quite convincing. But it is unsupported by the law.

Under Kansas law parties cannot entirely preclude the creation of an agency relationship simply by disclaiming it in writing.[22] Instead, "an agency relationship may exist notwithstanding either a denial of the agency by the alleged principal or a lack of mutual understanding of agency between the parties."[23] As a result, the disclaimer does not bar the existence of a joint venture as a matter of law. Rather, whether the CPFA constituted a joint venture must be determined from the entire agreement.[24] The existence of a fiduciary relationship, like a joint venture, is a question of fact decided from the facts and circumstances of each case.[25] When the existence of a joint venture is controverted, the relationship may be found in the mutual acts and conduct of the parties.[26]

Because the CPFA does not legally preclude formation of an agency—and thus joint venture—relationship, the Court will consider whether the Defendants adequately allege the

---

[22] *In re Appeal of Scholastic Book Clubs, Inc.*, 260 Kan. 528, 533-34, 920 P.2d 947, 951 (1996); *See also In re Martinez*, 444 B.R. 192, 206 (Bankr. D. Kan. 2011) ("[A]n agency can be created in Kansas even when the principal specifically denies that the agent is in fact an agent.").

[23] *Scholastic Book Clubs*, 260 Kan. at 533-34, 920 P.2d at 951.

[24] *Woolsey v. Petroleum Prod. Mgmt., Inc.*, 1990 WL 66591, at *7 (D. Kan. Apr. 4, 1990) (citing *First Nat'l Bank & Trust Co. v. Sidwell Corp.*, 234 Kan. 867, 872, 678 P.2d 118, 124 (1984)).

[25] *Ritchie Enters.*, 730 F. Supp. at 1053.

[26] *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 77, 596 P.2d 816, 823 (1979).

existence of a joint venture. Under Kansas law, "a joint venture is an association of two or more persons or corporations to carry out a single business enterprise for profit."[27] And a joint venture can only exist by the parties' agreement.[28] Kansas courts have put forth five factors that are indicative of a joint venture: (1) the joint ownership and control of property; (2) the sharing of expenses, profits, and losses, and having and exercising some voice in determining the division of the net earnings; (3) a community of control over and active participation in the management and direction of the business enterprise; (4) the intention of the parties, express or implied; and (5) the fixing of salaries by joint agreement.[29] Considering these factors, the Court finds that the Defendants have sufficiently alleged a joint venture.

*(a) Joint ownership and control of property*

This factor weighs in favor of the Defendants' claim that the CPFA was a joint venture. The property was jointly owned: the CPFA provided that Cargill and the Defendants would jointly hold title to the cattle. And aspects of the operation were jointly controlled: Cargill and the Defendants were to mutually agree on the quantity of cattle and their placement into feedlots.

*(b) The sharing of expenses, profits, and losses, and the determination of the division of net earnings*

The second factor also weighs in favor of the Defendants. Regarding expenses, the CPFA dictated that if financing was unavailable, "the Parties shall share equally in the costs for any new cattle." The CPFA also stated that the parties would "share equally in the profits or losses of such Cattle."

---

[27] *Id*. at 76.

[28] *Underground Vaults & Storage, Inc. v. Cintas Corp.*, 2015 WL 6647392, at *3, --- F. App'x --- (10th Cir. 2015).

[29] *Modern Air Conditioning*, 226 Kan. at 76, 596 P.2d at 823.

*(c) A community of control over and active participation in the management and direction of the business enterprise*

This factor is less clear. In some aspects of the agreement, Cargill had exclusive control. For example, Cargill was solely responsible for the risk management prong of the agreement. Cargill also handled all of the accounting and billed the Defendants for losses. These aspects suggest that the third factor weighs in Cargill's favor. On the other hand, the CPFA allowed each party to inspect and audit the other's books and records. Such checks and balances can be evidence of a community of control over the management of the business.[30] Ultimately, the third factor does not strongly weigh in either party's favor.

*(d) The intention of the parties, express or implied*

This factor weighs heavily in the Defendants' favor. In Kansas, a joint venture is an association of two corporations to carry out a single business enterprise for profit.[31] And the CPFA states, in relevant part, that the Defendants and Cargill "desire to collaborate on the procurement of natural cattle . . . and to share equally in the profits or losses." The relationship described in the CPFA is almost a textbook example of a joint venture, and the parties said that is what they *desired*. In the CPFA, Cargill and the Defendants unambiguously expressed the intent to enter into a joint venture.

*(e) The fixing of salaries by joint agreement*

Neither the contract nor any of the Defendants' allegations refer to a joint agreement to fix salaries. Therefore, this factor does not weigh in favor of the existence of joint venture.

---

[30] *Cf. Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P.*, 443 F.3d 1240, 1245-46 (10th Cir. 2006) (finding that the third factor weighed against the existence of a joint venture where one party was without veto or approval power).

[31] *Modern Air Conditioning,* 226 Kan. at 76, 596 P.2d at 823.

All told, three factors indicate that the CPFA was a joint venture, one factor weighs against such a finding, and another factor was neutral. Given these facts, the Defendants state a plausible claim that the CPFA constituted a joint venture. Accordingly, the Defendants sufficiently allege the existence of a fiduciary relationship, and Cargill's motion to dismiss is denied.

### 2. *Fiduciary Relationship Implied in Law*

Because the Defendants adequately allege the existence of a joint venture, and therefore survive Cargill's motion to dismiss, the Court need not determine whether a fiduciary relationship was implied in law.

## B. Motion for Partial Summary Judgment

Cargill moves for summary judgment on the Defendants' theory that Cargill's risk management practices constituted both a breach of contract and the implied duty of good faith and fair dealing. Cargill argues that the risk management provision of the CPFA was unambiguous, and its conduct complied with the plain language. Cargill further contends that since it did not breach the plain language of the CPFA, its conduct also did not constitute a breach of the implied duty of good faith and fair dealing.

Like Cargill, the Defendants also claim that the risk management provision was unambiguous, but argue that Cargill's reading of the plain language is erroneous. The Defendants contend that Cargill breached the risk management provision by failing immediately to implement corn hedges, speculating instead of hedging, and making unreasonable trades that do not qualify as "risk management." In addition, the Defendants contend that Cargill breached the implied duty of good faith and fair dealing because its conduct was arbitrary and unreasonable.

*1. Breach of Contract*

Cargill seeks judgment on the narrow issue of whether its risk management practices breached the CPFA. So this determination turns solely on the risk management provision of the CPFA. The risk management provision reads

> The Parties agree that Cargill will be solely responsible for determining and implementing any risk management (i.e. hedging) strategies for the Cattle on feed with the Feedlot Vendor, and the grain associated with feeding the Cattle.

Although both parties claim that the provision is unambiguous, they disagree as to what it actually required. Cargill places great emphasis on the terms "solely responsible" and "determining." Cargill argues that it was given "broad authority" to handle risk management and its responsibility was to determine "what, *if any*, risk management strategies would be implemented." (Emphasis in original). Cargill also downplays the significance of the phrase "risk management (i.e. hedging) strategies." Although "i.e." means "that is," Cargill argues that its obligation was not strictly limited to the implementation of hedges. Rather, Cargill claims that under the risk management provision, it could exercise "discretion, authority, power, ability, or judgment to select among various risk management strategies."

Unsurprisingly, the Defendants' interpretation of the risk management provision is much narrower. They contend that "sole responsibility" does not equal "sole discretion." Under the Defendants' reading of the provision, Cargill was *obligated* to perform risk management. More specifically, "Cargill had a duty to hedge." The Defendants claim Cargill breached the risk management provision by initially failing to hedge crops, speculating instead of hedging, and engaging in conduct so unreasonable that it does not even qualify as "risk management." Whether Cargill breached the CPFA depends on the actual extent of Cargill's risk management

obligations. Consequently, the Court cannot determine whether Cargill breached the risk management provision without first resolving what the provision actually provides.

The interpretation of a contract is a question of law that properly may be determined on a motion for summary judgment, provided the contract is unambiguous.[32] And "the primary rule for interpreting written contracts is to ascertain the parties' intent. If the terms of the contract are clear, the intent of the parties is to be determined from the language of the contract."[33] The effect of contract terms is to be deduced from their plain, general, and common meaning.[34]

The Court agrees with the Defendants that giving Cargill sole responsibility of risk management duties was not a delegation of complete discretion. "Responsibility" is "a duty, obligation, or burden."[35] And to be "responsible" is to be "[l]iable to be required to give account . . . of one's actions or of the discharge of a duty."[36] Black's Law Dictionary similarly defines "responsibility" as "[t]he quality, state, or condition of being answerable or accountable; liability."[37] Adopting the common meaning of "responsible," Cargill had a duty to determine and implement any risk management strategies. And Cargill's characterization that "its responsibility was to determine "what, *if any*, risk management strategies would be implemented" is incorrect. Presumably under Cargill's reading, Cargill would have been justified in not implementing any risk management strategies if it determined that none were

---

[32] *Duffin v. Patrick*, 212 Kan. 772, 778, 512 P.2d 442, 447-448 (1973); *see also* 10B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2730.1, 61-63 (3d ed. 2004).

[33] *Osterhaus v. Toth*, 291 Kan. 759, 768, 249 P.3d 888, 896 (2011).

[34] *Duffin*, 212 Kan. at 778, 512 P.2d at 447-448.

[35] *The American Heritage Dictionary of the English Language* 1496 (5th ed. 2011).

[36] *Id.*

[37] *Responsibility*, Black's Law Dictionary (10th ed. 2014).

required. This reading ignores the word "and." Use of the word "and" is significant.[38] Cargill's interpretation makes the implementation of risk management strategies dependent on a prior determination. But "and" does not denote dependence. Rather, it is a coordinating conjunction used to link independent ideas.[39] In this context, Cargill had a responsibility both to determine *and* implement any risk management strategies.[40]

Having established that Cargill had a duty, the Court now turns to the matter of deciding exactly what Cargill was tasked with "determining and implementing." What did the parties intend "any risk management (i.e. hedging) strategies" to mean? "Any" is defined as "[o]ne, some, every, or all without specification."[41] Here lies the significance of the CPFA's requirement to "determine." Cargill was not tasked with determining whether or not to engage in risk management strategies, but rather what kind of strategies to implement—one, some, every, or all. "Risk management strategies" is not defined in the agreement, but the term "i.e. hedging" provides guidance. "I.e." means "that is."[42] So another way to phrase Cargill's obligation is to say "Cargill was solely responsible for determining and implementing any risk management, that is, hedging, strategies." Taken in isolation, the risk management provision is unambiguous: Cargill was obligated to both determine and implement any hedging strategies on both cattle and

---

[38] *See Marshall v. Kan. Med. Mut. Ins. Co.*, 276 Kan. 97, 113, 73 P.3d 120, 131 (Kan. 2003) ("The use of the word 'and' eliminates any doubtful or conflicting meaning."); *see also Thomas v. Benchmark Ins. Co.*, 36 Kan. App. 2d 409, 415, 140 P.3d 438, 443 (2006) ("Use of the word 'and' in defining an auto accident as an 'unexpected and unintended event' requires the plaintiffs to show that the accident was both unexpected and unintended.").

[39] *Brusewitz v. Wyeth LLC*, 562 U.S. 223, 235 (2011).

[40] *In re A.C.G.*, 2010 WL 3732102, at *3, 238 P.3d 764 (Kan. App. 2010) (unpublished table opinion) (citations omitted) ("Ordinarily, the word 'and' is used as a conjunctive, requiring satisfaction of both listed conditions."); *Cf. Earthgrains Baking Co. v. Sycamore Fam. Bakery, Inc.*, 573 F. App'x 676, 680 (10th Cir. 2014) (noting that generally, the word "and" links independent ideas).

[41] *The American Heritage Dictionary of the English Language* 81 (5th ed. 2011).

[42] *Id.* at 874; *see also I.E.*, Black's Law Dictionary (10th ed. 2014).

grain. But the Court must "construe all provisions together and in harmony with each other rather than by critical analysis of a single or isolated provision."[43] And the seemingly plain meaning of the risk management provision is contradicted elsewhere in the CPFA.

Under paragraph 6 of the CPFA, which relates to accounting and payments, Cargill was required to reconcile "the hedge positions *or other risk management* accounts." (Emphasis added). So just a few lines below the risk management provision, the CPFA contemplates risk management strategies other than hedging. Contrary to the risk management provision, paragraph 6 presupposes that Cargill had the authority and discretion to implement a range of risk management strategies—hedging or otherwise. This provision contradicts a strict reading of the parenthetical "i.e. hedging."

Collectively, the CPFA is unclear as to whether Cargill had a strict obligation to hedge, or whether it was free to implement other risk management strategies. Considering the entirety of the CPFA, both interpretations are reasonable. Therefore, as to the precise issue of what exactly the parties intended Cargill's risk management duties to include, the CPFA is ambiguous.[44] And the ambiguity is significant. Under the Defendants' reading, Cargill's obligation would have been much more narrowly defined, and therefore, more easily breached. Alternatively, if the parties intended Cargill to have substantial discretion, proving breach would be much more difficult. Ultimately, the Court cannot determine the parties' intent regarding Cargill's risk management.

---

[43] *Investcorp, L.P. v. Simpson Inv. Co., L.C.*, 267 Kan. 840, 848, 983 P.2d 265, 271 (1999) (quoting *Metro. Lif Ins. Co. v. Strnad*, 255 Kan. 657, 671, 876 P.2d 1362, 1371 (1994) (internal quotation marks omitted).

[44] *Iron Mound, LLC v. Nueterra Healthcare Mgmt., LLC,* 298 Kan. 412, 418, 313 P.3d 808, 812 (2013) ("A contract is not ambiguous unless two or more meanings can be construed from the contract provisions.").

.

When terms are ambiguous, then parol evidence may be considered in order to ascertain to parties' intent.[45] And if the intent of the parties cannot be ascertained from undisputed parol evidence, then summary judgment is inappropriate.[46] Because both parties assert that the contract is unambiguous, neither presented parol evidence regarding their intent. In any event, the Court cannot imagine that such parol evidence would be undisputed. Because the risk management provision is ambiguous and the parties' intent is thus a question of unsettled facts, the Court denies Cargill's partial motion for summary judgment on the contract claim.[47]

2. *Breach of the Implied Duty of Good Faith and Fair Dealing*

Cargill moves for summary judgment on the Defendants' theory that Cargill's risk management practices breached the implied duty of good faith and fair dealing. Kansas law implies a duty of good faith in every contract.[48] This implied duty is derivative in nature, meaning that it does not create new contract terms but grows out of existing ones.[49] The duty of good faith and fair dealing only amplifies duties and rights already existing under the terms of the agreement.[50] The goal of the implied duty is to accomplish the parties' express promises, so a breach is actionable when it relates to an aspect of performance under the terms of the

---

[45] *Waste Connections of Kan. v. Ritchie Corp.*, 296 Kan. 943, 963-64, 298 P.3d 250, 264-65 (2013).

[46] *Id.*

[47] *See Cafer v. Ash*, 2015 WL 4366541, at *11, 353 P.3d 469 (Kan. App. 2015) (unpublished table opinion) ("Summary judgment is usually not appropriate when there is an ambiguity in a written contract."); *see also Genesis Health Clubs, Inc. v. Led Solar & Light Co.*, 2014 WL 1246768, at *5 (D. Kan. Mar. 26, 2014) ("The Court rejects this basis for summary judgment, as it concludes that a question of fact remains concering the intent of the parties in executing the agreement.").

[48] *Law v. Law Co. Bldg. Assocs.*, 42 Kan. App. 2d 278 285, 210 P.3d 676, 682 (2009), *rev'd on other grounds*, 259 Kan. 551, 289 P.3d 1066 (Kan. 2012).

[49] *Pizza Mgmt., Inc. v. Pizza Hut, Inc.*, 737 F. Supp. 1154, 1179 (D. Kan. 1990); *see also Bonanza, Inc. v. McLean*, 242 Kan. 209, 222, 747 P.2d 792, 801 (1987) ("[E]ssential terms of a contract on which the minds of the parties have not met cannot be supplied by the implication of good faith and fair dealing.").

[50] *Pizza Mgmt.*, 737 F. Supp. at 1184.

contract.⁵¹ Accordingly, the Defendants must point to a term in the contract that Cargill has violated by failing to abide by the good faith spirit of that term.⁵²

Here, Cargill seeks judgment solely on the theory that its risk management practices breached the implied duty of good faith and fair dealing. The implied duty has been described as a duty to do everything necessary to carry out the contract.⁵³ The Court cannot determine whether Cargill breached that duty without knowing what that parties' intended the contract to provide. Because the risk management provision is ambiguous, the Court simply cannot determine whether Cargill's risk management practices violated the good faith spirit of that term. Accordingly, Cargill's motion for partial summary judgment regarding the breach of the implied duty of good faith and fair dealing claim is also denied.⁵⁴

**C. Motion to Exclude Expert Testimony**

Lastly, Cargill moves to exclude the opinions of the Defendants' expert, Thomas Leffler. Cargill argues that Leffler's opinions on risk management are improper legal conclusions, which are inadmissible under Federal Rule of Evidence 702. For the most part, the Court agrees.

An expert may not apply the law to the specific facts of the case to form legal opinions.⁵⁵ And Leffler's report is littered with such opinions. To cite just one example, at one point he

---

⁵¹ *Id.* at 1179.

⁵² *Warkentine v. Salina Pub. Schs., USD No. 305*, 921 F. Supp. 2d 1127, 1134 (D. Kan. 2013).

⁵³ *Bonanza*, 242 Kan. at 222, 747 P.2d at 801 ("[C]ontracts impose on the parties thereto a duty to do everything necessary to carry them out.").

⁵⁴ There is an exception to the rule that a breach of the implied duty of good faith and fair dealing must be tied to an express provision. In Kansas, the implied duty can override express contract terms where one party "has gained the ability to destroy or injure the economic interest of the other party." In such circumstances, a claim for breach may lie even though no express provisions have been breached. *See Law Co. Bldg.*, 42 Kan. App. 2d at 286, 210 P.3d at 682. But the issue now before the Court is whether Cargill's risk management practices constituted a breach of the implied duty. Such a breach would turn on the good faith spirit of the risk management provision.

⁵⁵ *See, E.g., A.E. v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991).

opines that Cargill's conduct "is a violation of Section 4 of the Agreement." This testimony would be an improper attempt to tell the jury what result they should reach.[56] "Expert testimony of this type is often excluded on the grounds that it states a legal conclusion, usurps the function of the jury in deciding the facts, or interferes with the function of the judge in instructing the jury on the law.[57] In other words, the Defendants are not entitled to present an "expert opinion" that Cargill breached the CPFA.[58] Only the jury can make such a determination. Cargill's motion to exclude expert testimony is therefore granted to the extent that the Defendants' try present this sort of improper expert testimony.

With that in mind, the Defendants are not completely precluded from presenting expert testimony about risk management. More specifically, expert evidence about the parties' intent regarding the risk management provision may be relevant. Rule 702(a) of the Federal Rules of Evidence requires that an expert's opinion "help the trier of fact to understand the evidence or to determine a fact in issue." If a fact is not at issue, then expert testimony on that subject is unnecessary.[59] Therefore, Cargill is correct that an expert may not testify as to the meaning of an unambiguous contract, because such a determination is one of law for the Court. But the Court has already determined that the CPFA is ambiguous regarding Cargill's risk management obligations. And so evidence may be received to determine the parties' intent, which is an issue

---

[56] *United States v. Simpson*, 7 F.3d 186, 188 (10th Cir. 1993).

[57] *Id.*

[58] *See, e.g.*, *Emp'rs Reinsurance Corp. v. Mid-Continent Cas. Co*, 202 F. Supp. 2d 1212, 1219 (D. Kan. 2002).

[59] *Austin Fireworks, Inc.*, v. *T.H.E. Ins. Co.*, 1993 WL 484214, at *1 (D. Kan. Aug. 2, 1993).

of fact.[60] Expert opinion about risk management generally may help the trier of fact to determine a fact in issue.[61]

In sum, Cargill's motion to exclude the Defendants' expert testimony is granted in part and denied in part. The Defendants are allowed to present evidence of the parties' intent regarding the risk management provision. But Leffler's opinions that apply the law to the specific facts of this case and seek to tell the jury what decision to reach will not be allowed. The Defendants may file a redacted expert report that is consistent with this order. But the Court is not reopening discovery. Since all discovery deadlines have passed, the report must be limited to previously expressed opinions—the Defendants cannot add anything new. And if Cargill still objects to the Defendants' redacted report, it can request a *Daubert* hearing for the Court to resolve the matter.

## IV. Conclusion

For the reasons stated above, the Court denies Cargill's motions to dismiss and for partial summary judgment. The Court denies Cargill's motion to dismiss the Defendants' claim for breach of a fiduciary duty because the Defendants adequately alleged the existence of a joint venture. The Court also denies Cargill's motion for partial summary judgment because the CPFA is ambiguous, and therefore material issues of fact need to be resolved regarding the risk management provision. Lastly, the Court grants in part and denies in part Cargill's motion to

---

[60] *Wood River Pipeline Co. v. Willbros Energy Servs. Co.*, 241 Kan. 580, 582, 738 P.2d 866, 869 (1987) (citing *Hall v. Mullen*, 234 Kan. 1031, 1037-38, 678 P.2d 169, 174 (1984)).

[61] *Hartzler v. Wiley*, 277 F. Supp. 2d 1114, 1118 (D. Kan. 2003); *see also Phillips v. Calhoun*, 956 F.2d 949, 952 (10th Cir. 1992) (allowing an expert to offer understanding of customary meaning and usage of contested terms); *Hutton Contracting Co. v. City of Coffeyville*, 2004 WL 2203449, at *8 (D. Kan. Sept. 24, 2004) ("If the language of the contract is ambiguous, however, evidence is admissible to determine the intent of the parties to the contract, which is an issue of fact.").

exclude the Defendants' expert because although the expert report contained several improper legal conclusions, expert testimony may be relevant to resolve the CPFA's ambiguity.

**IT IS THEREFORE ORDERED** that Cargill's Motion to Dismiss, or in the Alternative for Judgment on the Pleadings (Doc. 219) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Cargill's Motion for Partial Summary Judgment (Doc. 127) is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Cargill's Motion to Exclude Expert Testimony (Doc. 130) is hereby **GRANTED IN PART AND DENIED IN PART.**

**IT IS SO ORDERED**.

Dated this 2nd day of March, 2016.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE